[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter is before the court on the Application for Declaratory Relief and Order to Show Cause filed by Ernest R. Davis, Jr. (the "Applicant") filed pursuant to General Statutes § 52-225f. The applicant was a plaintiff in a lawsuit which was settled by the execution of a settlement agreement and release. Under the structured settlement agreement the Applicant was entitled to receive four payments: $7,899.00 on January 6, 1996, $14,872.00 on January 6, 2001, $20,779.00 on January 6, 2006 and $29,069.00 on January 6, 2011. The first two payments have been made and the applicant is seeking court approval to transfer the remaining two payments totaling $49,848.00 as provided by General Statutes § 52-225f which requires that this court determine that the proposed transfer is "in the best interest" of the applicant and "fair and reasonable to all parties."[1]
In support of his application, on March 7, 2002, the applicant filed with the court certain documents intended to establish that the transfer is in the applicant's best interest and fair and reasonable to all parties. Among those was a document entitled "Multi State Transfer Disclosure" substantially conforming to that which the law requires.[2]
Among other things, it confirms that the applicant received a copy of the disclosure at least ten days prior to receipt of "this contract" [sic], presumably another document constituting the structured settlement transfer agreement. The disclosure recites the two remaining payments under the structured settlement agreement and the total amount of those payments remaining to be paid: $49,848.00. It further states that the "discounted present value of the $49,848.000 payments transferred is $16,165.10." It states the "discount rate used in determining such discounted present value: 19.82% effective annual rate as of 2/20/02." Contrastly, the disclosure statement also divulges that the "discounted present value of the payments transferred . . . under the standard used for valuing annuities is $34,753.17" based upon a federal rate of 5.60%.
The disclosure also contains a "good faith itemized listing" of all commissions, charges and fees payable by the applicant: a $2,000.00 legal fee, the reasonable of which the court cannot ascertain as there is no itemized legal bill included in the applicant's submission, any advances made on the applicant's behalf for Mail Boxes, Etc., notary and fax fees and advances related to attorneys' fees or any other advances made to payee against the amount payable to payee.[3] The disclosure alerts the applicant that the transfer may trigger adverse tax consequences and advises the applicant to seek independent financial advice. CT Page 8203-cp
Mr. Davis lives out of state and did not appear in court at the hearing. Therefore, in support of his application Mr. Davis submitted a notarized affidavit apparently intended to demonstrate that the transfer is in his best interest and fair and reasonable to him. The affidavit was signed by a notary public on February 4, 2004, but not signed by Mr. Davis until April 2002. The affidavit states that the applicant wants to sell the remaining two lump sum payments to "Settlement Funding, L.C," but later says it is his desire that the court enter an order which would allow him to sell the two remaining payments to "Peachtree Settlement Funding."
The affidavit acknowledges that "the actual funding date will not occur until the satisfaction of the conditions precedent to the purchase agreement which is annexed to the complaint in this action, including approval of the court." The court notes that there is no complaint in this case and while there is an application seeking declaratory relief to which the affidavit may be referring, there is no purchase agreement annexed to the application or any of the other pleadings filed in this. Without knowing those conditions, the court cannot assess the reasonableness and fairness of the transfer or whether the transfer is in the applicant's best interest. In his affidavit the applicant says he needs to sell the payments because current truck is in need of significant repair and he needs the money to repair his truck or for a down payment on a new truck and that he relies upon his truck for transportation, showing that he is in financial straits.
The applicant states in his affidavit that he has had the time and opportunity to consider the transaction, that in the course of his "professional and educational activities," he has been responsible for his own personal financial affairs, however he does not disclose his education or profession or the nature or extent of his experience in handling financial matters.
Although he states that he has a "basic understanding of financial and economic matters," it is clear that he does not and has not sought professional advice. In an apparent effort to demonstrate his understanding of financial matters, the applicant's affidavit asserts that it is a "fact that monies to be received in the future are worth significantly less than if these monies are received in a lump sum today."[4] The statement is facially erroneous and indicative of the applicant's financial nascence. While a dollar today is worth more than a dollar tomorrow, it is not worth significantly more. Moreover, the proposed purchaser is not promising to pay the applicant the same amount of money today as he is entitled to receive in the future under the structured settlement agreement. It is promising to pay him a lesser amount in recognition of the time value of money, namely $16,465.10 this CT Page 8203-cq year rather than $49,848.00 in future years. Therefore the amount, the date of receipt, and the likelihood of receipt of a future payment are all determinative of and must be evaluated in determining whether the right to receive a payment on a particular date has more, less or the same value as the right to receive another payment on another date. The applicant states he is capable of making the decision without the assistance of a financial advisor and the court infers therefrom that he has not consulted a financial advisor.
The attorneys who represent Mr. Davis in this matter also represent both the National Association of Structured Settlement Purchasers and Peachtree Settlement Funding, the reputed purchaser of the structured settlement agreement.
The discount rate of 19.82% is well above prevailing interest rates, including prime, mortgage and credit card interest rates reported daily in the media. It is common knowledge that interest rates are at a 40-year low. Mr. Davis has introduced no evidence to establish the reasonableness of the 19.82% discount rate. On the contrary, the divulgence of the 5.6% rate in the disclosure document tends to negate a conclusion that the higher rate is reasonable in the absence of any evidence to the contrary and there is no such contrary evidence before the court. The applicant has not affirmed that he has investigates other alternatives.
As stated above, the court may approve the transfer of structured settlement agreement payments, but only after determining that the transfer is "in the best interests" of the applicant and is "fair and reasonable to all interested parties"; therefore the question is not whether the proposed purchaser made full and fair disclosure, whether the applicant has reached the age on majority, whether the applicant needs the money, or whether the applicant understands the transaction. Even if the proposed purchaser makes a full and fair disclosure and the adult applicant understands the transaction and needs the money, the court is still obligated to determine whether the transaction is in the applicants best interest and fair and reasonable to both parties. The court is not at liberty to interpret a statute which is clear on its face. The applicant has not borne his burden of proof imposed by the statute, and therefore the application is DENIED.
 BY THE COURT ___________________ Vanessa L. Bryant, J.